UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

RANDY WASHINGTON,

Petitioner.

No. 11-cr-605 (RJS)
No. 18-cv-1187 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Randy Washington, proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in connection with his conviction and sentence for conspiracy to commit robbery, robbery and attempted robbery, brandishing a firearm during the commission of a robbery, conspiracy to distribute and possess narcotics, and trafficking firearms. (Doc. No. 146 ("Petition").) For the reasons set forth below, the petition is DENIED.

## I. BACKGROUND

Between October 2008 and February 2011, Washington and his coconspirators participated in a series of robberies, drug crimes, and weapons offenses in the Bronx.[1] Among other crimes, Washington and his accomplices (collectively, the "Crew") robbed a bar called The Magic Pot Lounge in the Bronx on October 11, 2008, during which they held patrons and employees at gunpoint and stole their wallets, cash from the register, and bottles of liquor. (Presentence Investigation Report ("PSR") ¶ 19.) On August 12, 2010, Washington and two Crew members

---

[1] The facts are drawn from Washington's final presentence investigation report. (Doc. No. 132 ("PSR").) In making its ruling, the Court has also considered Washington's Petition and memorandum of law in support thereof (Doc. No. 146), the government's memorandum of law in opposition to the Petition (Doc. No. 155 ("Gov't Br.")), Washington's two supplements to his petition (Doc. No. 158; Case No. 18-cv-1187, Doc. No. 12), and the government's replies to those supplements (Doc. Nos. 157, 160, 162), as well as all attached exhibits.

impersonated police and entered the apartment of an individual believed to possess drug proceeds; Washington used a gun to pistol-whip that person about the face.  (*Id.* at ¶ 20.)  Several days later, on August 18, 2010, Washington and the Crew drove to the apartment of another suspected drug dealer, where two of the men used a similar ruse to enter the apartment and steal fifteen pounds of marijuana.  (*Id.* at ¶¶ 21–23.)  Between 2007 and 2011, Washington was also involved in the sale of marijuana, cocaine, and heroin, as well as the transportation of firearms from North Carolina to New York for the purpose of illegal sale.  (*Id.* at ¶¶ 24–27.)

On June 16, 2011, Washington was arrested for the robbery, narcotics, and firearm offenses described above.  A grand jury ultimately returned a superseding indictment that charged Washington with conspiracy to commit robbery, in violation of 18 U.S.C. § 1951 (Count One); robbery and attempted robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Counts Two, Three, and Four); brandishing a firearm during the commission of a robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C), and 2 (Counts Five and Six); conspiracy to distribute and possess with intent to distribute narcotics, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count Seven); and trafficking firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 2 (Count Eight).  (Doc. No. 29 (the "Indictment").)

Prior to trial, the government made a plea offer that would have permitted Washington to plead guilty to one robbery count and one count of brandishing a firearm in connection with that robbery.  (Doc. Nos. 84 at 3, 106 at 6:8–18.)  At Washington's arraignment, his then-attorney, Louis Freeman, acknowledged the plea offer and noted that the brandishing charge carried a seven-year minimum prison term, which combined with the robbery charge would produce a total guidelines sentence of approximately 120 months' imprisonment.  (*Id.*) The government explained during the arraignment that, if convicted on all counts at trial, Washington would face a mandatory

minimum sentence of forty-two years of imprisonment, which would increase to fifty-two years if the government filed a prior felony information in connection with the narcotics conspiracy count. (*Id.* at 7:11–14.)  Thereafter, Washington, Freeman, and the government held a reverse proffer session during which the government again explained to Washington the terms of the proposed plea deal and its possible sentencing consequences.  (Doc. No. 84 at 3.)

Washington declined the plea offer (*id.*), and the government filed a prior felony information, which increased the combined mandatory minimum sentence to fifty-two years. (Doc. No. 21.)  Before trial, Washington filed a motion to suppress evidence (Doc. No. 37) and a motion to sever the robbery-related, narcotics, and firearms counts from each other (Doc. No. 42), both of which the Court denied (Doc. No. 48).  Washington then filed a motion in limine to preclude certain evidence (Doc. No. 46), which the Court also denied (Doc. No. 49).  Trial commenced on March 12, 2012, and on March 20, the jury returned guilty verdicts on all counts.

Prior to sentencing, Freeman sent a letter requesting that the Court order an evaluation of Washington's cognitive capacity.  (Doc. No. 103 at 2.)  The Court granted the request and appointed the psychiatrist proposed by Washington, Dr. Sanford L. Drob, to evaluate Washington's mental competence.  (*Id.* at 5.)  In his subsequent written report, Dr. Drob determined that Washington suffered from a number of cognitive impairments but found no evidence that Washington had been incompetent to stand trial; Dr. Drob also concluded that Washington was competent to proceed with sentencing.  (Aff. of David Gordon, dated Aug. 9, 2013 ("Gordon Aff."), Doc. No. 87, Ex. 3.)  Notwithstanding Dr. Drob's diagnosis, Freeman requested a further neuropsychological evaluation of Washington, which the Court also granted. (Doc. No. 70.)  Dr. William B. Barr, also selected by Washington's counsel, examined Washington and issued a report that largely confirmed Dr. Drob's findings.  (Gordon Aff., Ex. 4.)  Although

Freeman subsequently requested further testing to determine the origin and nature of Washington's cognitive impairments (Doc. No. 103 at 7), the Court denied the request, finding that such information was not relevant to the issue of competency (Doc. No. 73).

Freeman later sent a letter to the Court moving for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, arguing that (1) Washington did not have "a meaningful opportunity to knowingly and voluntarily plead guilty" (Doc. No. 103 at 11 (citing *Lafler v. Cooper*, 566 U.S. 156, 173 (2012))), or (2) in the alternative, Washington's neurological impairment deprived him of effective assistance of counsel during plea negotiations (Doc. No. 103 at 11–15).  In light of Washington's representation to Dr. Barr that Freeman failed to convey certain provisions of the plea offer (Doc. No. 104 at 4:15–5:24), the Court relieved Freeman and appointed David Gordon to represent Washington going forward (*id.* at 9:10–17, 12:18–16:5).

On August 9, 2013, Washington, through Gordon, filed a motion requesting that the Court (1) set aside the jury's verdict because Washington was incompetent to engage in plea negotiations and stand trial, or (2) order the government to renew its prior plea agreement to Washington because Freeman provided ineffective assistance of counsel during plea negotiations.  (Doc. No. 85.)  The Court denied the motion, finding that Washington was both competent and adequately represented before, during, and after trial.  (Doc. No. 109 ("Op.").)

Nevertheless, at the Court's suggestion the government ultimately agreed to dismiss Count Five of the Indictment – the first of the two Section 924(c) counts – which reduced Washington's mandatory minimum prison term to twenty-five years.  (Doc. No. 133 at 2:23–3:5, 4:7–12.)[2]  The

---

[2] An intervening Supreme Court decision reduced Washington's aggregate mandatory minimum sentence from fifty-two years to fifty years, *see Alleyne v. United States*, 570 U.S. 99, 115–16 (2013), and the government's dismissal of Count Five further reduced the mandatory minimum sentence to twenty-five years.

Court imposed a total term of imprisonment of twenty-seven years, including (1) twenty years on Counts One through Four, twenty-two years on Count Seven, and five years on Count Eight, all to run concurrently; and (2) five years on Count Six, to run consecutive to the other sentences.  (Doc. No. 130.)  The Second Circuit affirmed Washington's conviction in a summary order.  *United States v. Bent*, 654 F. App'x 11 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 698 (2017) (mem.).

Now before the Court is Washington's petition pursuant to 28 U.S.C. § 2255, raising an assortment of constitutional, statutory, and evidentiary arguments.[3]  (Doc. No. 146 ("Pet.").)  At the government's request, the Court stayed the matter pending the Second Circuit's resolution of two cases, *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018), and *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), which were expected to implicate Washington's claim that he had not committed "crimes of violence."

After the Second Circuit rendered its decisions in those cases, the parties filed supplemental submissions to this Court.  (Case No. 18-cv-1187, Doc. No. 12; Case No. 11-cr-605, Doc. Nos. 157, 158, 160).  The government subsequently filed another supplemental brief after the Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  (Doc. No. 162.)  Finally, on May 28, 2021, the Court received a letter from Washington dated May 17, 2021, which the Court liberally construed to be a motion for compassionate release under the First Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221.  (Doc. No. 177.)  The government submitted a response on June 11, 2021, opposing Washington's motion for compassionate release. (Doc. No. 179.)

---

[3] On October 22, 2020, the Court received an undated letter from Washington that reasserted multiple arguments relating to his habeas petition.  (Doc. No. 174.)

## II.  LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

"It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)); *accord United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack . . . .").  The sole exception is when "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (1980).  Section 2255 also precludes a defendant from bringing claims for the first time that could have been raised on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998).  Where the petitioner has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised pursuant to Section 2255 only if the petitioner

can demonstrate (1) cause for the failure to raise the claim and prejudice from the alleged error, or (2) actual innocence of the crime. *Id.*

Cause can be established by showing that the default was the result of "some objective factor external to the defense." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For example, where a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim." *United States v. Whitman*, 115 F. Supp. 3d 439, 443 (S.D.N.Y. 2015) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) (internal quotation marks omitted). "[A] claim is not reasonably available when, at the time of the procedural default, binding precedent foreclosed the argument or when the defendant lacked the relevant tools with which to raise his claim on direct appeal." *Id.* (citations and internal quotation marks omitted). To demonstrate prejudice, the petitioner must show "not just that the errors 'created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.'" *Borrego v. United States*, 975 F. Supp. 520, 522 (S.D.N.Y. 1997) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Alternatively, the petitioner may show that the federal court's refusal to consider the merits of his claim will result in a fundamental miscarriage of justice, because he is "actually innocent" of the crimes for which he was convicted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). A court may find that a petitioner is actually innocent only when, after reviewing all of the evidence, it concludes that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (internal quotation marks omitted).

## III. DISCUSSION

Washington raises a grab bag of arguments, including that: (1) the government committed a *Brady* violation by failing to call a cooperating witness and failing to disclose information to Washington's then-counsel prior to trial; (2) Washington was not competent to partake in plea

negotiations and received ineffective assistance of counsel in the course of those discussions; (3) the Court improperly admitted evidence of prior state charges against Washington; (4) the Court improperly construed the Hobbs Act robbery offense underlying Washington's conviction on Count Six as a "crime of violence;" (5) Washington's counsel in a prior state proceeding failed to advise Washington that his guilty plea could increase sentences imposed for future crimes; (6) the Court improperly enhanced Washington's sentence on the basis of a judicial determination of a prior conviction; (7) Washington's conviction was the result of an illegal search and seizure; (8) Washington's indictment was defective, which made the instructions to the jury inconsistent with the charges therein; and (9) the government failed to prove all elements of the firearm offenses brought against Washington.[4]   The Court will address each argument in turn.

### A.  Alleged *Brady* Violations

Washington claims that the government committed a *Brady* violation because it did not call failed cooperating witness Wilston Regis, a member of the Crew, at trial.  (Pet. at 20.) According to Washington, the government did not call Regis because (1) his testimony would have contradicted that of another Crew member-turned-cooperating witness, Kirk Bent, and (2) Regis had lied to the government about his own criminal conduct.   (*Id.*)   Washington alleges inconsistencies in Bent's and Regis's testimony with respect to several issues, including (1) whether Washington knew, when he provided a gun to his co-defendants, that it would be used for one of the robberies;[5] (2) the number of people who participated in the August 10, 2018 robbery;

---

[4] Washington asserts an additional ground for relief in his original petition that essentially duplicates the fourth asserted ground for relief – that the Hobbs Act robbery count was not a "crime of violence."  (Pet. at 5.)  Washington reiterated that theory in his March 8, 2019 request to amend his § 2255 petition, wherein he also added claims that Hobbs Act robbery conspiracy is not a crime of violence and that his indictment was defective.  (Case No. 18-cv-1187, Doc. No 12.)  The Court addresses Washington's claims as to both substantive and conspiratorial Hobbs Act robbery in Section III(D) of this Opinion.

[5] Washington alleges that Regis and Bent gave inconsistent accounts concerning whether Washington knew that the

(3) the number of cars used in that robbery; and (4) whether Regis was present for the Magic Pot robbery.  (*Id.* at 20–21.)

"Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995).  The government also has a duty to provide impeachment material and prior inconsistent statements to the defense so that defense counsel can effectively prepare to cross examine the government's witnesses.  *See* 18 U.S.C. § 3500; *Giglio v. United States,* 405 U.S. 150, 153 (1972).  But the government's obligations are limited to disclosure; the government has no affirmative duty to call witnesses or introduce evidence favorable to the defense at trial.

Here, the government informed the Court and Washington before trial that it did not intend to call Regis as a witness.  (Doc. No. 155 ("Gov't Br.") at 2, 4.)  On the first day of trial, Washington's counsel requested the government's notes from Regis's proffer session (Tr. at 4–10), which the government provided later that evening (Tr. at 181:2–14).  The following day, Washington's counsel acknowledged his receipt of the proffer notes and advised the Court that Washington would be making no further motions pertaining to Regis or the notes.  (*Id.*)  At no time did Washington attempt to call Regis to testify as part of the defense case.

Since Washington did not raise a *Brady* or *Giglio* argument on appeal, he may not do so now unless he can first demonstrate cause and prejudice for his failure or actual innocence.  But Washington identifies no objective, external factor that prevented him from raising this issue on direct appeal.  *Murray*, 477 U.S. at 488.  Further, Washington has not shown a possibility of

---

gun he provided to his co-defendants would be used in a robbery.  According to Washington, Regis was the one who told the government that Washington provided the gun "for the robbery," while Bent said that Washington did not know the robbery would occur.  (Pet. at 20.) Thus, by Washington's account, Regis's testimony would have inculpated him, not exculpated him.

prejudice – never mind an actual, substantial disadvantage to him, *Frady*, 456 U.S. at 170 – resulting from the government's alleged violations. Finally, Washington's Section 2255 petition does not try to establish his "actual innocence." *See Bousley* 523 U.S. at 622–23. Therefore, his claim with respect to Regis's testimony is procedurally barred.

Washington also asserts that he was denied access to information from a post-trial proffer session with Bent, as described in a March 29, 2012 letter from the government to Washington's counsel. (Pet. at 22.) But Washington does not attempt to show cause for failing to raise the issue of Bent's proffer session disclosures on direct appeal,[6] and he again offers no detail from which the Court can conclude that he suffered prejudice by not having the benefit of Bent's post-trial statements to support his defense.[7] The government can hardly be faulted for not making *pretrial* disclosures of statements that were not made until *after* the trial had concluded. And Washington does not assert that Bent's post-trial recollections amounted to proof of Washington's actual innocence. Therefore, this second component of his *Brady* argument is also procedurally barred.

B. Competence and Ineffective Assistance of Counsel

Washington next claims that he was incompetent to engage in plea negotiations and received ineffective assistance of counsel during that process. (Pet. at 26–28.) With respect to competency, Washington asserts that the doctors who evaluated him determined he had serious mental deficiencies and that the doctors' diagnoses of his competency were not based upon his cognitive state at the time plea negotiations took place. With respect to the assistance of counsel, Washington alleges that his original attorney, Freeman, did not explain the government's ten-year

---

[6] The government sent the letter about Bent's proffer session less than three weeks after trial, so Washington should have been well aware of Bent's disclosures by the time he filed his first appellate brief on June 9, 2015. (Case No. 14-1470-cr , Doc. No. 28.)

[7] The Petition states only that the statements were "about [Washington]" and that Washington "could [have] used this info to fight [his] case better." (Pet. at 22.) However, the information disclosed was largely duplicative of Bent's cross-examination testimony at trial. (Gov't Br. at 4.)

plea offer to him in a way that he could understand and that Washington had always been adamant about obtaining a plea deal rather than going to trial.

But Washington's competence to engage in plea negotiations and the effectiveness of his counsel were litigated exhaustively during the two-and-a-half years that elapsed between his conviction and sentencing.  The Court determined that Washington's cognitive deficits did not render him incompetent to partake in plea negotiations and that his ineffective assistance of counsel claim was incredible, as detailed in the opinion denying Washington's motion to set aside the judgment.  (Op. at 5–11.)  On direct appeal, the Second Circuit considered both of these arguments and affirmed the Court's decision.  *Bent*, 654 F. App'x at 12–13 (holding that "[t]he district court did not clearly err in concluding that Washington was competent to engage in plea negotiations" and that "[t]he district court correctly concluded that Washington failed to demonstrate prejudice, as he could not show that but for his counsel's allegedly ineffective advice, there was a reasonable probability that he would have accepted the plea offer")  Because Washington cannot relitigate arguments that have already been considered on direct appeal in a Section 2255 petition, *Sanin*, 252 F.3d at 83, his competence and ineffective assistance of counsel claims are procedurally barred.

## C.  Prior Crimes Evidence

Washington also contends that the Court failed to follow Federal Rule of Evidence 404(b) when it admitted into evidence the drugs, firearms, and money seized during Washington's "arrest" by local law enforcement officers.  (Pet. at 24.)  To support this argument, Washington asserts that the state case brought following those seizures was dismissed, that none of the items found on the premises belonged to him, and that "the government [sub]mitted this evidence against [him] to try to show [his] character."  (*Id.*)

11

Although the Petition is not precise on this point, it appears that Washington is referring to the government's introduction of evidence that was recovered in connection with one or more arrests that occurred between 2010 and 2011 and were originally prosecuted in state court. Specifically, on September 16, 2009, Washington was arrested for selling crack cocaine to an undercover police officer.  About four months later, on February 3, 2010, officers with the New York City Police Department ("NYPD") arrested Washington and his girlfriend at an apartment in the Bronx, where they seized narcotics, drug paraphernalia, and thousands of dollars in cash.  (Doc. No. 27 at 3.)  Although Washington's girlfriend later pleaded guilty to narcotics possession charges, the charges against Washington were dismissed.  (*Id.* at 3–4.)  Two months later, on April 3, 2010, another NYPD officer arrested Washington after the officer observed him selling cocaine; Washington was charged by felony complaint, but the charges were later dismissed.  (*Id.* at 4.) Finally, on February 23, 2011, NYPD officers arrested Washington in the rear room of a building where they discovered narcotics, drug paraphernalia, a nine-millimeter pistol, and ammunition; in another room in the same building, officers seized a .380 caliber handgun, more ammunition, and parts to a third gun.  (*Id.* at 4–5.)[8]

Prior to trial in this case, the government indicated that it intended to introduce evidence from those state seizures as direct proof of the narcotics conspiracy.  Washington subsequently moved in limine to exclude this evidence, arguing that it was propensity evidence barred by Federal Rules of Evidence 404(b)(1) and 403.  (Doc. No. 27.)  Recognizing that the evidence in question constituted direct proof of Washington's involvement in the charged conspiracies, the Court denied the motion.  (Doc. No. 49.)  Accordingly, the government was permitted to introduce testimony

---

[8] At the time of Washington's trial, the state court cases stemming from the September 16, 2009 and February 23, 2011 arrests had not been adjudicated.  (*Id.*)

and exhibits related to the September 16, 2009, February 3, 2010, April 3, 2010, and February 23, 2011 arrests.  (*See, e.g.*, Tr. at 254:8–271:10; 104:1–111:6; 764:16–774:3.)

Washington now attempts to revive his challenge to the admissibility of that evidence, but his argument is clearly barred because he did not raise the issue on direct appeal and has not made a showing of cause and prejudice or actual innocence to justify the Court's consideration of the claim now.  Moreover, even if the Court were to reach the merits of that argument, it would still fail, since it rests on a flawed understanding of Rule 404(b)(1).  That Rule "prohibits the use of a prior crime to establish a propensity to commit the crime at issue," but the same evidence may be admissible under Rule 404(b)(2) "for another enumerated purpose."  *United States v. Rivera*, No. 16-cr-95 (NRB), 2017 WL 1091982, at *1 (S.D.N.Y Mar. 8, 2017); *see* Fed. R. Evid. 404(b)(2). As the Court observed in its order denying Washington's motion in limine, the evidence introduced at trial constituted "direct evidence of the charged conspiracies, would be [independently] admissible under Federal Rule of Evidence 404(b), and would not be unduly prejudicial under Federal Rule of Evidence 403."  (Doc. No. 49 at 2; *see also* Tr. at 100:19–21.)  Clearly, the contraband discovered during the searches was introduced to demonstrate Washington's involvement in the drug and firearms trafficking conspiracies charged in the Indictment, not as evidence of a *prior* crime that would suggest Washington had a propensity for criminal conduct. Further, the testimony would also have been admissible for a legitimate purpose under Rule 404(b)(2), since it was probative of Washington's "motive, opportunity, plan, knowledge, and absence of mistake."  *See* Fed. R. Evid. 404(b)(2); *see also, e.g.*, *United States v. Barris*, 377 F. App'x 93, 95–96 (2d Cir. 2010) (evidence of prior gun arrest and conviction admissible "because it was relevant to the firearms possession charged here and to [a defendant's] relationship with [his] alleged co-conspirator"); *United States v. Lofton*, 275 F. App'x 30, 32 (2d Cir. 2008)

(evidence of prior gun and drugs offenses admissible to "show[] the relationship between co-conspirators and [a defendant's] intent").   Accordingly, Washington's Rule 404(b) claim is procedurally barred and without merit.

### D.  Hobbs Act Robbery as a "Crime of Violence"

Washington next asserts that the Hobbs Act robbery charged in Count Three of the Indictment, which served as the predicate offense for the Section 924(c) firearm charge in Count Six, did not constitute a "crime of violence" within the meaning of Section 924(c).  (Pet. at 15.) However, the Second Circuit's decision in *United States v. Hill* forecloses Washington's argument, since it holds unequivocally that Hobbs Act robbery is a crime of violence for the purposes of Section 924(c).  890 F.3d at 60 ("Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (quoting 18 U.S.C. § 924(c)(3)(A)).

Washington nevertheless argues that under *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), Hobbs Act robbery cannot be considered a crime of violence.[9]  But Washington misapprehends the law.  In both *Johnson* and *Dimaya*, the Supreme Court found that residual "risk of force" provisions that closely resembled Section 924(c)(3)(B) were unconstitutionally vague.  *See Johnson*, 576 U.S. at 597 (holding that "increasing a defendant's sentence under the [residual clause of the Armed Career Criminal Act] "denies due process of law"); *Dimaya*, 138 S. Ct. at 1215 (holding that the residual clause in 18 U.S.C. § 16, as incorporated into the Immigration and Nationality Act's definition of "aggravated felony," contained the same defects as the clause in *Johnson*).  Subsequently, the Supreme Court ruled on

---

[9] Washington also argues the robbery was not a crime of violence because "nobody got hurt" and the Crew did not intend to harm anyone.  (Pet. at 13, 15.)

Section 924(c)(3)(B) directly in *United States v. Davis*, finding that the residual "risk of force" clause was unconstitutionally vague.  139 S. Ct. 2319, 2323–24 (2019).[10]  But none of these decisions implicate the "elements clause" in Section 924(c)(3)(A), which defines as crimes of violence felonies whose *elements* include the "use, attempted use, or threatened use of physical force."  18 U.S.C. § 924(c)(3)(A).  As noted, the Second Circuit held in *Hill* that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  890 F.3d at 60 (quoting 18 U.S.C. § 924(c)(3)(A)).  That makes it a categorical crime of violence for purposes of Section 924(c).  Therefore, Washington's argument is without merit.

### E.  Ineffective Assistance of Counsel in Prior State Proceeding

Washington next challenges the government's filing of a prior felony information pursuant to 21 U.S.C. § 851, which increased the mandatory minimum sentence for Count Seven from ten years to twenty years.  (Doc. No. 21.)  He alleges that his counsel in the prior felony case – a New York State proceeding in which Washington was convicted and sentenced to one year in prison for the attempted sale of a controlled substance (*id.*) – provided ineffective assistance by not warning Washington that his conviction in that case might increase his sentence in the event of future convictions like the one here.  (Pet. at 11.)  But that argument is foreclosed by § 851(e), which provides that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years

---

[10] In *United States v. Barrett*, the Second Circuit held that conspiracy to commit Hobbs Act robbery is also a crime of violence under Section 924(c)(3)(B), citing its own precedent that "a conspiracy to commit a crime of violence is itself a crime of violence under 18 U.S.C. § 924(c)(3)."  903 F.3d 166, 175 (2d Cir. 2018) (collecting cases).  Although that judgment was subsequently vacated and remanded for further consideration in light of *Davis*, *Barrett* is not applicable to Washington's case, as the Section 924(c) count here was predicated on the substantive robbery count (Count Three) and not the conspiracy count (Count One).  Accordingly, Washington's contention that the Hobbs Act robbery conspiracy charged in Count One is not a "crime of violence" is irrelevant.

before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). Washington's prior conviction occurred on October 26, 2005, and the prior felony information was filed on January 31, 2012. (Doc. No. 21 at 1.) Because the conviction occurred more than five years before the date of the prior felony information, Washington cannot challenge the validity of the conviction here. Further, Washington did not raise this issue on direct appeal, nor does Washington make any effort to show cause and prejudice or actual innocence that would permit him to proceed on that argument here. Accordingly, this argument is also procedurally barred.

### F. Sentencing Enhancement for Washington's Prior Felony

Washington further contends that the jury – not the judge – should have determined whether his prior conviction for attempted sale of a controlled substance, which increased the mandatory minimum sentence for the narcotics conspiracy charged in Count Seven (Doc. No. 133 at 17:14–18), applied at sentencing (Doc. No. 158 at 2). But Washington's argument misconstrues the requirements of 21 U.S.C. § 851 and the Constitution.

The Supreme Court has instructed that the "[e]lements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt," whereas "[s]entencing factors . . . can be proved to a judge at sentencing by a preponderance of the evidence." *United States v. O'Brien*, 560 U.S. 218, 224 (2010) (citations omitted). Moreover, "where a statute provides for an enhanced penalty based on a defendant's prior convictions, the fact of those convictions is a sentencing factor to be determined by the court rather than a jury." *United States v. Snype*, 441 F.3d 119, 148 (2d Cir. 2006)). Therefore, "the fact of a prior felony conviction may be decided by a judge, not a jury, even if that fact increases the statutory minimum term of imprisonment to which the

defendant is exposed." *United States v. Del Rosario*, 561 F. App'x 68, 69 (2d. Cir. 2014) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998)).[11]

The procedures to be applied in determining whether to impose the sentencing enhancement for prior felony convictions are set forth in 21 U.S.C. § 851. That statute expressly provides that "[i]f the [defendant] denies any allegation of the information of prior conviction," the district court "shall hold a hearing to determine any issues raised by" the defendant; and such "hearing shall be before the court without a jury and either party may introduce evidence." 21 U.S.C. § 851. Thus, there was no requirement that the prior felony information be submitted to the jury. Washington's argument is therefore without merit.

Merits aside, this argument is also procedurally barred because Washington did not raise this issue on direct appeal, nor does Washington make any effort to show cause and prejudice or actual innocence.

### G.  Alleged Fourth Amendment Violation

Washington next asserts that police officers violated the Fourth Amendment when they conducted a warrantless search at the building where Washington and his girlfriend had been living on February 3, 2010. (Pet. at 17–18.) Prior to trial, Washington moved to suppress all physical evidence seized pursuant to that search on the ground that, at the time of the search, he was the invited guest of the building's lawful tenant, his girlfriend. (Doc. No. 38 at 2–3.) After a suppression hearing, the Court denied Washington's motion, finding that Washington and his girlfriend were trespassers who had no legal right to live on the premises and therefore had no reasonable expectation of privacy under the Fourth Amendment. (Doc. No. 48 at 3–4.)

---

[11] The holding in *Alleyne v. United States*, that facts that increase a mandatory minimum sentence are "elements" of a crime that must be submitted to a jury, does not apply to prior convictions. 570 U.S. 99, 111 n.1 (2013) ("In *Almendarez–Torres v. United States*, we recognized a narrow exception to this general rule for the fact of a prior conviction . . . . [W]e do not revisit it for purposes of our decision today." (citation omitted)).

Washington challenged the Court's denial of his suppression motion on direct appeal, and the Second Circuit affirmed this Court's ruling.  *See Bent*, 654 F. App'x at 14 (finding Washington's argument "to be without merit").  Because Washington cannot relitigate issues that have already been decided on direct appeal, *Sanin*, 252 F.3d at 83, this argument is procedurally barred.

### H.  Defective Indictment and Improper Jury Instructions

Washington further contends that the Indictment, returned by the grand jury prior to the Supreme Court's decision in *Johnson*, was impermissibly vague because it did not define a "crime of violence" or specify why the Hobbs Act robbery counts – Counts Two, Three, and Four – were considered crimes of violence.  Because of this alleged defect, Washington argues that "the court instructed the jury on an element that [was not] charged in [the] indictment."  (Case No. 18-cv-1187, Doc. No. 12 at 1.)

Washington misconstrues the Indictment and the law.  Although the Indictment originally included two weapons counts pursuant to 18 U.S.C. § 924(c) – Counts Five and Six – the Court ultimately dismissed Count Five prior to sentencing pursuant to the government's motion.  (Doc. No. 133 at 2:23–3:5, 4:7–12.)  As to Count Six, the Indictment reads as follows:

> On or about October 11, 2008, in the Southern District of New York, RANDY WASHINGTON, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the robbery charged in Count Three of this Indictment, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying and possession of a firearm, which was brandished.  (Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(c)(1)(C)(i), and 2.)

(Indictment at ¶ 7.)  Consequently, the Indictment plainly identifies the crime of violence that served as the predicate offense for Count Six.

Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must

include the "statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). To meet this standard, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted).

Count Six of the Indictment follows this standard to the letter: it describes the nature of the offense, provides the time and place the offense allegedly occurred, and tracks the language of Section 924(c)(1)(A)(ii). *See Tramunti*, 513 F.2d at 1113. It also defines the crime of violence that serves as the predicate offense when it refers to "the robbery charged in Count Three," i.e., Hobbs Act robbery. *See* Fed. R. Crim. P. 7(c)(1) ("A count may incorporate by reference an allegation made in another count."). Count Three of the Indictment in turn describes Washington's conduct by reciting the definition of Hobbs Act robbery in 18 U.S.C. § 1951(b)(1), i.e., "the unlawful taking or obtaining of personal property from the person . . . by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." That crime "has *as an element* the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). Thus, the conduct charged in Count Three of the Indictment was unequivocally a crime of violence at the time the Indictment was filed, even prior to the Second Circuit's holding in *Hill*. Further, the Supreme Court's post-Indictment decisions in *Johnson* and *Davis* implicated Section 924(c)(3)(B), not Section 924(c)(3)(A), and therefore have no bearing on the validity of the Indictment.

Nor can it be disputed that the jury instructions were consistent with the charges in Count

Six of the Indictment.  Specifically, the Court charged the jury, in relevant part, as follows:

> Count[] . . . Six . . . allege[s] a violation of Section 924(c) of Title 18 of the United
> States Code. That provision makes it a crime for any person:  "During and in
> relation to any crime of violence . . . to use or carry a firearm, or, in furtherance of
> any such crime, to possess a firearm." . . .  Count Six is a firearms count connected
> with the October 11, 2008 robbery charged in Count Three.  This means that you
> cannot consider Count Six unless you first determine that the defendant is guilty of
> the robbery charged in Count Three. . . .  I instruct you that the robber[y] alleged in
> Count[] Three of the Indictment qualif[ies] under the law as [a] crime[] of violence
> for which the defendant may be prosecuted in a court of the United States.

(Tr. at 980:12–16, 21–25; 987:20–23.)  Therefore, the jury instructions were consistent with the

charges in the Indictment, and Washington's argument is without merit.

### I.  Failure to Prove All Elements of the Firearms Offenses

Washington also argues that the Supreme Court's decision in *Rehaif v. United States*, 139

S. Ct. 2191 (2019), imposes additional obligations on the government to prove that Washington

was aware that he was illegally possessing a firearm, and further alleges that the government failed

to meet this burden.  (Doc. No. 158 at 1.)  Although Washington does not specify the charges to

which this argument applies, he once again misinterprets the statute and relevant caselaw.  Section

922(g) of Title 18 prohibits members of certain enumerated groups – including those "who ha[ve]

been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one

year" – from possessing or trafficking in firearms.  In *Rehaif*, the Supreme Court held that to prove

a violation of Section 922(g) and Section 924(a)(2), the government must adduce evidence that

the defendant knew that he was a member of such a prohibited category.  139 S. Ct. at 2200.  But

*Rehaif*'s holding applies only to charges brought under 18 U.S.C. § 922(g) and § 924(a)(2); it has

no bearing on Washington's convictions for firearm possession under § 924(c), Hobbs Act robbery

under 18 U.S.C. § 1951, conspiracy to distribute narcotics under 21 U.S.C. § 846, or engaging in

the business of dealing in firearms without being a licensed importer, manufacturer, or dealer of firearms in violation of 18. U.S.C. § 922(a)(1)(A).  Washington's argument therefore fails.

### J.  Compassionate Release Motion

After briefing on his habeas petition was completed, Washington sent a letter to the Court which, liberally construed, appears to be a motion for compassionate release under the First Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221.  (Doc. No. 177.)  The government submitted a response opposing the motion for failure to exhaust administrative remedies.  (Doc. No. 179.)  Under 18 U.S.C. § 3582(c)(1)(A), the Court may modify a term of imprisonment when "extraordinary and compelling reasons" exist, "upon motion of the Director of the Bureau of Prisons" or upon a defendant's own motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

The Second Circuit recently clarified in *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021), that "§ 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government."  *See also United States v. Roberts*, 18-cr-528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (explaining that courts cannot read new exceptions into the mandatory exhaustion rule, as "[s]tatutory exhaustion requirements, such as those set forth in Section 3582(c), must be strictly enforced" (internal quotation marks omitted)).

In this case, Washington never submitted an administrative request to the Bureau of Prisons seeking compassionate release and has consequently failed to exhaust his administrative remedies.  (*See* Doc. No. 179 n.2.)  The government actively opposes the motion due to Washington's failure to exhaust his administrative remedies, and thus has not waived the exhaustion requirement.  (*Id.*

at 1.)  Accordingly, the Court denies Washington's motion for compassionate release without prejudice to renewal following exhaustion of administrative remedies at the Bureau of Prisons.[12]

## IV.  CONCLUSION

For the reasons stated above, the Court DENIES the Petition in its entirety and Washington's separate motion for compassionate release.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 146 in case number 11-cr-605, to close case number 11-cv-1187, and to mail a copy of this order to Washington.  In addition, because Washington has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Washington may not proceed *in forma pauperis*.

SO ORDERED.

Dated:     January 7, 2022
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

[12]  The Court received an additional letter from the Washington, postmarked October 7, 2021.  (Doc. No. 181.)  But whether the Court construed the October 7 letter as a supplement to Washington's habeas petition or his motion for compassionate release, the arguments raised in the letter are baseless.  In the letter, Washington refers to state court charges over which this Court has no jurisdiction and asserts – without a showing of any supporting evidence, cause, or prejudice – that his co-defendant, Bent, lied to the Court regarding Washington's participation in interstate drug trafficking.  Washington also suggests that his sentence should be reduced under the First Step Act, which is inapplicable because it was enacted in 2018 and does not apply retroactively to his 2014 sentence.  *See* Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018).  Finally, Washington asserts that *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), "restore[s] [his] innocence."  (Doc. No. 181 at 1.)  That decision, which held that Colorado statutes violated due process by requiring individuals to prove their innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to reversed or vacated convictions, has no bearing on Washington's case.